512 A.2d 1276

COMMONWEALTH of Pennsylvania

v.

**Lynne Mary Dodson TANUR, a/k/a/ Lynn Tanur, Lynne Tanur, Lynne Dodson, Carol Schwartz, Appellant.**

Superior Court of Pennsylvania.

Submitted Feb. 10, 1986.

Filed: July 16, 1986.

Carolann A. Young, Somerset, for appellant.

David J. Flower, Assistant District Attorney, Somerset, for Com., appellee.

Before KELLY, MONTGOMERY and HESTER, JJ.

KELLY, Judge:

A criminal complaint was filed on March 30, 1984 before the Somerset County District Magistrate charging defendant/appellant with several counts of violation of the Controlled Substance, Drug, Device and Cosmetic Act.[1] Bond was set at ten thousand dollars ($10,000.00).

Defendant, residing in Allegheny County, voluntarily appeared before an Allegheny County District Magistrate to submit to process of a warrant for her arrest issued by Somerset County authorities. A cash percentage bail of 10% of the above amount, or one thousand dollars ($1,000.00), was required for defendant's release. Defendant was unemployed and without income; she requested that her mother, Mrs. Evelyn Dodson, obtain the cash to secure her release. Mrs. Dodson, a recent widow, used some of the insurance proceeds from her husband's life insurance policy for the bail money. Ms. Tanur, the defendant, took the money from her mother, handed it to the clerk of the court and signed the deposit slip for the bail. She then turned the deposit slip over to her attorney,[2] and was released pending further proceedings.

Ms. Tanur attended all of her scheduled court appearances. She pleaded guilty at trial in Somerset County to several of the original counts; the remaining charges were nolle prossed by agreement with the District Attorney. The defendant was sentenced on June 3, 1985 to a term of imprisonment, fines, restitution and court costs.

1. 35 P.S. Section 780–113(a)(12), (16).
2. Defendant/appellant is now represented by other counsel; trial counsel was not contacted in order to ascertain the whereabouts of the original deposit slip. (N.T. 8/13/85, p. 2–3)

■■■■■■■■■■■■■

The Commonwealth filed a Petition on June 21, 1985 to Dispose of Bond. The net amount of the bail on deposit with the Clerk of Courts was nine hundred and ninety dollars ($990.00); ten dollars had been deducted to cover administrative costs. The Commonwealth sought to have the remainder used to cover defendant's fines, restitution and court costs.[3] An evidentiary hearing was held on July 24, 1985; defendant and her mother testified as to their opposition to having the bail utilized for the criminal penalties. They contended that since the money deposited originally belonged to Mrs. Dodson and not the defendant, the money should be returned to Mrs. Dodson. The Commonwealth presented no witnesses. On September 10, 1985 Judge Coffroth issued an Opinion and Order granting the Commonwealth's Petition. The appeal to this court followed. For the reasons stated below, we affirm.

The central issue before us on appeal is the definition of "depositor" of the bail money, as depositor is used in the rule, Pa.R.Crim.P. 4015.[4]

**Rule 4015. Receipt for Deposit; Return of Deposit**

(a) The issuing authority or the clerk of the court who takes a deposit of bail other than a surety bond, *shall*

---

**3.** Although the trial court's opinion addressed the issue as to whether a defendant's fines and court costs may permissibly be deducted from defendant's bail deposit under Rule 4015, that issue was not argued in the brief submitted by defendant on appeal. Accordingly, we note this remains an undecided issue. *See, Accord, McDonald, supra,* 476 Pa. at 222–223, fn. 5, 382 A.2d at 126, fn. 5.

**4.** Defendant poses the question on review as follows:

Where the record is devoid of facts regarding bail, but uncontradicted testimony at the hearing on Petition to Dispose of Bond shows that a cash percentage bail in the amount of One Thousand and no/100 ($1,000.00) Dollars was made by defendant before a District Justice in Allegheny County with funds of her mother, and a receipt therefore was issued to defendant, must the Court of Common Pleas return the bail to the depositor, less administrative costs, upon successful completion of the conditions of the bail?

We agree that the bail should be returned to the depositor, but note that defendant's argument is addressed to the contention that the depositor was Mrs. Dodson, and not the defendant. Therefore our analysis must either affirm or reverse the lower court's determination that Ms. Tanur is the depositor. For the reasons stated infra, we affirm.

*furnish to the depositor an itemized receipt of such bail, and note on the transcript or docket the amount deposited, and by whom deposited.* When the issuing authority takes such deposit of bail, he shall deliver it with the transcript to the clerk of the court, who shall place such deposit in a bank or other depository approved by the court and keep proper records thereof. *Upon full and final disposition of the case, the issuing authority or the clerk of the court shall return the deposit promptly after twenty (20) days, less any fees or commissions authorized by law.*

(b) *When a sum of money equal to a percentage of the full amount of the bail has been deposited,* the issuing authority or clerk of court shall return the same to the depositor within twenty (20) days after full and final disposition of the case, *less a reasonable charge relating to the costs of administering the percentage cash bail program.*

(Emphasis added).

Although the word "depositor" has never been used in previous law on the subject of bail money, prior caselaw did deal with the determination of the identity of the owner of the bail money. In Pennsylvania, under the common law and under the Act of 1921, which codified the common law, the defendant was deemed to always be the depositor of the bail. However, the amending Act of 1925, P.L. 49, 19 P.S. §§ 71–72, provided for return of bail money to "person or persons making such deposit." Thus courts interpreting the amended Act held that the Act recognized that for the first time such persons providing bail money were not always defendants. Therefore the record should show in each instance the identity of those persons depositing the bail money. *Commonwealth v. Popchak,* 46 D & C 524 (1942). Pennsylvania Rule of Criminal Procedure 4009, effective 1966, was renumbered Rule 4015 in 1973, and replaced the Act of 1925. The Rule, as reproduced *supra,* was the first to use the term "depositor" and this Court is

the first to be faced with the task of defining "depositor" as used in the Rule.

Black's Law Dictionary defines "depositor" simply as one who makes a deposit. Black's Law Dictionary 396 (5th Ed.1979). "Deposit" is defined as ".... money lodged with a person as an earnest or security for the performance of some contract, to be forfeited if the depositor fails in his undertaking." Id. at 394–5.

In the instant case the lower court held an evidentiary hearing after the Commonwealth entered its Petition, to consider defendant's claim that Mrs. Dodson was the depositor. At that hearing both the defendant and her mother testified that Mrs. Dodson handed the money to the defendant who then gave the money to the clerk and signed the deposit slip. (N.T. 8/13/85, p. 8, 11). This evidence is unequivocal. The bail money deposited on defendant's behalf was deposited by the defendant herself. Moreover, the record includes the original Certification of Bail and Discharge papers where the defendant's signature is shown, but the space where Mrs. Dodson might have signed as depositor of the bail is blank. Defendant's trial counsel was present; in fact, defendant handed counsel her copy of the deposit papers. Counsel was present to insure defendant's interests were protected, including defendant's interest in the money deposited. We can only wonder why counsel did not advise defendant and Mrs. Dodson that Mrs. Dodson might sign the bail deposit form when she had the opportunity to do so if the bail money was to be returned to Mrs. Dodson. Nonetheless, we hold defendant, as the only person to hand over the money and the only person to sign the deposit slip, to be the depositor.

To reach any other result would lead to absurd and needlessly complicated future outcomes. For we would be deciding that despite the clear evidence of the record, as agreed to by both defendant and her mother, bail money could be returned to someone other than the depositor of record. Clearly, the statute's purpose is best served not by a legal determination as to the possible property interest

persons may hold in the money supplied for bail, but by a factual conclusion as to who lodges the money with the court. The statute provides that the court should keep a record as to who deposits the funds. To go beyond the unequivocal record would be to ignore the clear language of the statute, creating ambiguity where none existed previously.

Furthermore, it is our duty to interpret the statute in the most logical and efficient manner for future applications, Pa.R.Crim.P. 2. We would only open the Court's record keeping process to attack and dispute from parties whose interest may be biased by their desire to regain the bail money free from a defendant's obligations to the Court. We agree with the trial court that: "(t)he problem of credibility is aggravated in cases of this kind where the defendant and the third party claimant alone know all the details of the arrangement between them respecting the bond money, and are not adversaries before the court, and instead are in league pressing for return of the money. . . ." (Trial Opinion at 10). Therefore, for all the above stated reasons, we hold that the depositor is the person who signs the deposit slip and is recorded as doing so by the clerk of the court accepting the bail money. In this case the depositor was Ms. Tanur, the defendant.

Defendant, on appeal, urges that we consider the holding in *Commonwealth v. McDonald,* 476 Pa. 217, 382 A.2d 124 (1978) as necessitating reversal in this case. Although our courts have not defined "depositor", the Supreme Court, in *McDonald,* remanded a case to the court of common pleas for an evidentiary hearing to determine "whose money was actually deposited on McDonald's behalf, the record being equivocal on this point." *McDonald,* 476 Pa. at 222–223, fn. 5, 382 A.2d at 126, fn. 5. The Supreme Court noted that although McDonald originally petitioned the Court to return the bail deposit directly to him, defendant's counsel later requested the money be returned to defendant's sisters. *McDonald,* 476 Pa. at 220, 382 A.2d at 125. The trial court refused to hear evidence from McDonald's sisters, thus cre-

ating confusion on the record as to who actually deposited the bail.

The trial court herein held a hearing in conformity with *McDonald* procedures to clear up disputes arising after the deposit of the bail money with the lower court. Unlike *McDonald,* however, the testimony unanimously demonstrates that defendant personally deposited the money and signed the deposit slip, and accordingly the record shows no ambiguity or equivocation on this point. Moreover, the trial court determined. that the mother's act in supplying the cash for defendant's bail was in the nature of a gift or a loan due to: (1) the intent demonstrated by Mrs. Dodson; and (2) the fact that Mrs. Dodson chose to give the money to defendant rather than to the Court directly.

It is axiomatic that findings of the lower court as to facts will not be disturbed on appeal, absent abuse of discretion or error of law; however this Court on review is free to draw its own conclusions and inferences from the facts and to disregard the lower court's legal conclusions. *See Minteer v. Wolfe,* 300 Pa.Super. 234, 446 A.2d 316 (1982); *First Pennsylvania Banking & Trust Co. v. Liberati,* 282 Pa.Super. 198, 422 A.2d 1074 (1980).

Pertinent sections of the direct examination of Miss Tanur demonstrate the intent of the parties:

Q. Was it your expectation that at the completion of these proceedings, that that money would be returned to you if possible?

A. Yes.

Q. Would it be returned to you as your money or returned to you to give to somebody else?

A. *To give back to my mother.*

(N.T. 8/13/86, p. 6) (Emphasis added). Mrs. Dodson testified at the hearing:

Q. Did you give the sum to the District Justice or did you give it to your daughter?

A. *I gave it to Lynn to take care of.*

(N.T. 8/13/85 p. 11) (Emphasis added). From this testimony we find ample evidence with which to concur with the lower court that Mrs. Dodson delivered the money to her daughter and not to the Court with the express expectation of being repaid by her daughter and not by the Court. Thus, Mrs. Dodson made a loan to her daughter of the one thousand dollars ($1,000.00).

Order affirmed and jurisdiction relinquished.