724 A.2d 814

STATE OF NEW JERSEY, PLAINTIFF, v. BERNARD RECANATI, DEFENDANT–RESPONDENT, AND DANIEL PROVENZANO, DEFENDANT–APPELLANT

Superior Court of New Jersey
Appellate Division

Submitted January 20, 1999—Decided February 25, 1999.

Before Judges KEEFE, EICHEN and COBURN.

*DeCotiis, Fitzpatrick & Gluck*, attorneys for appellant (*Daniel J. FitzPatrick*, on the brief).

*James C. DeZao*, attorney for respondent (*Frank C. Azzinaro*, of counsel; *Robert D. Fried*, on the brief).

No other parties participated in this appeal.

The opinion of the court was delivered by

EICHEN, J.A.D.

This appeal concerns the proper disposition of a $50,000 cash deposit in lieu of bond posted as bail by defendant Bernard Recanati. Following an evidentiary hearing, the Law Division, Criminal Part ordered release of the funds to Recanati. Co-defendant Daniel Provenzano appeals, contending that he furnished the funds for defendant's bail and therefore he is entitled to return of the cash bail deposit. We hold that in the absence of an affidavit of ownership filed by Provenzano at the time cash bail was posted, as required by *R.* 3:26–4(f), he is not entitled to remission of the deposit even though it is essentially undisputed that he furnished the money for Recanati's bail. Accordingly, we affirm the order releasing the cash bail to Recanati.

Defendants Recanati and Provenzano were arrested on June 12, 1997. Provenzano was arrested on charges of second degree theft by extortion, *N.J.S.A.* 2C:20–5a; third degree terroristic threats, *N.J.S.A.* 2C:12–3b; and conspiring to commit these offenses, *N.J.S.A.* 2C:5–2. Recanati was arrested on charges of first degree kidnapping, *N.J.S.A.* 2C:13–1b(2); second degree aggravated assault, *N.J.S.A.* 2C:12–1b(1); and conspiring to commit these offenses, *N.J.S.A.* 2C:5–2. Defendants were arraigned and incarcerated in the Bergen County Jail that day. Bail was set at $500,000 and $50,000 for Provenzano and Recanati, respectively.

Provenzano arranged for two bank checks to be issued from the account he maintained at Fleet Bank to cover bail for Recanati and himself. To accomplish this, Provenzano borrowed a portion of the funds from a third party who transferred the needed funds into Provenzano's account. On June 13, 1997, an agent from the bank delivered two bank checks to the Bergen County Sheriff's Department, one in the sum of $50,018 for Recanati, and a second bank check in the sum of $500,018 for Provenzano.[1] At the time

---

[1] The additional $18 went toward an administrative fee. We presume the checks were deposited with the clerk of the county in which the offenses were allegedly committed. *R.* 3:26–4(a).

of delivery, the agent declined to sign a bail receipt for either of the checks. Provenzano was not present when the agent delivered the checks. Upon tender of the check representing Recanati's bail deposit, Recanati signed an affidavit of ownership and a recognizance that referenced the $50,000 bail deposit.[2] The affidavit of ownership states in pertinent part:

> I, *BERNARD RECANATI* ..., being duly sworn upon my oath according to law, depose and say: I am the owner of *FIFTY THOUSAND (50,000.00) CHECK # 001245868* Dollars this day deposited in the above entitled case as cash money in lieu of bail and recognizance, and, subject to a forfeiture, claim such deposit by reason of such ownership. This affidavit is made pursuant to *N.J.S.[A.]* 2A:169-9 and Rule 2:9-5(g).[3]

Following the posting of bail, both men were released from the county jail.

On November 19, 1997, Recanati moved to reduce his bail from $50,000 to $5,000. The application was granted on January 9, 1998. Shortly thereafter, Provenzano secured an order to show cause requiring Recanati to show why Provenzano should not receive the $45,000 that the Sheriff's Department was about to remit to Recanati. In support of the order to show cause, Provenzano submitted a certification setting forth his claim of ownership to the bail funds. An evidentiary hearing was held on February 19, 1998, the return date of the order to show cause.

At the hearing, Recanati did not dispute that the source of his bail deposit was Provenzano's bank account at Fleet Bank; his contention was that he repaid the monies to Provenzano sometime after the two were released from jail and therefore the bail money should be returned to him. Provenzano denied Recanati repaid the bail money and claimed that he was entitled to its return because he proved by sufficient competent evidence that he furnished the funds for Recanati's bail.

---

[2] Provenzano testified that he signed an affidavit of ownership for his own bail deposit. That affidavit is not at issue in this appeal.

[3] Rule 2:9-5(g) is the old source rule for current *R.* 3:26-4(f). *See* Pressler, *Current N.J. Court Rules,* note to *R.* 3:26-4 (1998).

At the conclusion of the hearing, Judge Gaeta held that, pursuant to *R.* 3:26–4, the $50,000 bail deposit should be released to Recanati because he had signed the affidavit of ownership when the funds were deposited. The judge determined that although Provenzano may have furnished the money for Recanati's bail, he had not signed the required affidavit under the rule, *R.* 3:26–4(f). The judge stated that "there had to be some type of agreement" between Recanati and Provenzano with respect to the $50,000. Although Judge Gaeta recognized that issues concerning the agreement between the parties and Recanati's alleged repayment were more amenable to resolution in a civil action by a jury, he nevertheless allowed the attorneys to present evidence on those issues. Thereafter, he made findings of fact and conclusions of law regarding Recanati's claim that he had repaid the money to Provenzano. The judge determined that the evidence presented by Recanati was credible and that Provenzano had failed to meet "his burden ... to establish by a preponderance [of the evidence] that he was not paid, that the money was his, that he's entitled to the money." On March 3, 1998, Judge Gaeta entered an order declaring that the "bail money, in the amount of $50,000, posted for Bernard Recanati ... belongs to Bernard Recanati," and stayed enforcement of the order pending this appeal.

On appeal, Provenzano raises the following points:

*POINT I*

JUDGE GAETA ERRED IN RULING APPELLANT–PROVENZANO HAD NO OWNERSHIP INTEREST IN THE CASH BAIL BECAUSE PROVENZANO DID NOT FILE AN AFFIDAVIT OF OWNERSHIP PURSUANT TO *R.* 3:26.

A. Judge Gaeta Failed to Recognize Appellant–Provenzano's Ownership Interest In Recanati's Bail Pursuant to Provenzano's Certification.

B. Judge Gaeta Imposed An Improper Burden of Proof on Appellant–Provenzano Pursuant to Recanati's Claim of Ownership Under *R.* 3:26–4(f).

C. The Money Posted For Bail Came Out of Appellant–Provenzano's Account And Must Be Returned to Provenzano.

*POINT II*

JUDGE GAETA ERRED BY DENYING APPELLANT–PROVENZANO'S MOTION FOR SEQUESTRATION OF WITNESSES.

Rule 3:26–4 governs the deposit and discharge of bail. Subsection (a) of that rule provides, in pertinent part, that "[a] person admitted to bail shall, together with that person's sureties, sign and execute a recognizance before the person authorized to take bail or, if the defendant is in custody, the person in charge of the place of confinement." *R.* 3:26–4(a). That subsection also recognizes that "[c]ash may be accepted" as bail. Subsection (f) of that rule provides:

> Cash Deposit. When a person *other than the defendant* deposits cash in lieu of bond, the person making the deposit *shall* file an affidavit concerning the lawful ownership thereof, and on discharge such cash may be returned to the owner named in the affidavit.
>
> [*R.* 3:26–4(f) (emphasis added); *see also R.* 3:26–4(g) (setting forth same requirement when ten percent of bail is deposited as cash).]

Subsections (f) and (g) of the rule were "amended effective September 1992 to require the affidavit of ownership to be filed by whoever makes the deposit, whether or not that person is the defendant." Pressler, *Current N.J. Court Rules,* comment to *R.* 3:26–4(f) (1998). The revision modified the former practice which made it discretionary for the owner of the cash bail to file such an affidavit.[4] *Ibid.*

■ This appeal is resolvable solely by recourse to the court rule which sets forth the requirements for remission of a cash bail deposit to a person other than the defendant once the terms of the recognizance have been fulfilled, *R.* 3:26–4(f). We read the rule as plainly stating that, when a person other than the defendant deposits cash in lieu of bond, that person must *simultaneously* file an affidavit of ownership in order to secure his or her right to return of the deposit. Any subsequent assertion of ownership, by certification or otherwise, is ineffective to secure remission of the

---

[4] "The discretionary provision of the source rule in respect of the return of the deposit to the person named in the affidavit, was, however, retained, [because] not infrequently a lien on such funds is asserted by the Internal Revenue Service" and the money would not necessarily be returned to the owner. Pressler, *supra,* comment to *R.* 3:26–4(f).

bail deposit despite any extrinsic evidence the person seeking its return might present to demonstrate an ownership interest in it.

The purpose of requiring the filing of an affidavit of ownership at the time the cash bail is deposited by a person other than the defendant is to simplify the procedure for the person authorized to take bail and the Criminal Part. Any other interpretation would unnecessarily lead to complicated and protracted inquiries concerning a myriad of possible ownership interests in the cash deposit, including inquiries, as here, concerning the true source of the bail deposit, the nature of the tender (such as whether it was a gift or a loan), and the terms or conditions for return of the advance. Such inquiries are better suited for resolution in a civil action in the Law Division.

In addition, making release of a cash deposit to a person other than a defendant dependent upon the execution of an affidavit of ownership reduces the likelihood of litigation over priority claims by government agencies, such as the Internal Revenue Service, or other creditors alleging entitlement to such deposits as they become eligible for release. *See Commonwealth v. Tanur*, 355 *Pa.Super.* 188, 512 *A.*2d 1276 (1986) (holding that the defendant's bail deposit could be attached notwithstanding the fact that her mother supplied the cash for her bail, because defendant had signed the bail deposit slip); *see also State v. Giordano*, 283 *N.J.Super.* 323, 329, 661 *A.*2d 1311 (App.Div.1995) (holding that the third party depositor of cash bail must consent before the court may apply bail funds to defendant's restitution obligation); *see generally* Michael G. Dupee, Annotation, *Propriety of Applying Cash Bail to Payment of Fine*, 42 *A.L.R.* 5th 547 (1996); 8A *Am.Jur.*2d *Bail and Recognizance* § 64 (1997).

In this case, the evidence presented regarding the affidavit of ownership was unequivocal: Recanati signed the affidavit and recognizance when the cash bail was deposited. Provenzano did not file any proof of ownership until the money was about to be released, seven months after bail was posted, when he filed a certification in the Criminal Part proceedings, declaring his own-

ership interest in the deposit. We conclude that his assertion of ownership was too late to be effective to overcome the *prima facie* evidence of ownership submitted by Recanati and that Judge Gaeta properly determined that the $50,000 should be remitted to Recanati. Although Provenzano presented sufficient credible evidence that his funds were the source of the cash bail deposit for Recanati and although he complains the credible evidence was insufficient to establish that Recanati repaid him for the bail deposit, absent a contemporaneous filing of an affidavit establishing ownership, return of the cash bail must be to the person who signed such an affidavit. Here, that person was Recanati.

Rule 3:26-4(f) simply requires the Criminal Part on an application for remission of a cash bail deposit to examine the affidavit of ownership presented and if its authenticity is not challenged, to order remission of the deposit to the stated owner. Accordingly, Judge Gaeta need not have considered and resolved the issues concerning Provenzano's purported entitlement to return of the monies he allegedly advanced for Recanati's cash bail. Rather, as the parties themselves recognized, such questions are more amenable to resolution in a civil proceeding. Notably, Provenzano's counsel argued as much at the hearing:

> If there's an issue of any other side agreements, whether somebody loaned money, whether somebody promised to lend money, whether somebody—to repay money, whatever that issue is, that is an issue which either is worked out among parties or is the subject of a separate independent lawsuit, in which full discovery is taken, witnesses are deposed, there's document production.

Because the issue presented by this appeal is one of first impression in this state, and because the record reflects Provenzano's intention to reserve for later resolution in a civil action Recanati's claim of repayment, Provenzano may bring an action in the Law Division, Civil Part, against Recanati, alleging breach of contract, conversion, or some other basis for relief, should he choose to commence such an action. In the circumstances of this case, we conclude it would be unfair to deprive Provenzano of an opportunity to present his claims to a jury, after discovery is complete.

In light of our disposition here, Provenzano's arguments that the judge erred assigning the burden of proof to him or in denying his motion to sequester witnesses are moot.

Affirmed.