**JOH WILLIAMS, Appellant/Defendant**
**v.**
**PEOPLE OF THE VIRGIN ISLANDS, Appellee/ Plaintiff**

S. Ct. Criminal No. 2012-0035

Supreme Court of the Virgin Islands

November 5, 2013

MICHAEL A. JOSEPH, ESQ. (argued), YOHANA M. MANNING, ESQ., St. Croix, USVI, *Attorneys for Appellant.*

PAMELA R. TEPPER, ESQ., Assistant Attorney General, St. Thomas, USVI, *Attorney for Appellee.*

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice.*

## OPINION OF THE COURT

(November 5, 2013)

HODGE, *Chief Justice.* Appellant Joh Williams seeks appellate review of the Superior Court's July 19, 2012 Judgment and Commitment, which adjudicated him guilty of first-degree murder and various other offenses. For the reasons discussed below, we reverse his convictions and remand for a new trial.

## I. STATEMENT OF RELEVANT FACTS AND PROCEDURAL POSTURE

Joh Williams[1] and two codefendants, Jalani Williams and Khareem Hughes, were charged with several offenses stemming from events that took place on August 2, 2009, in the vicinity of a restaurant on St. Croix. On that date, at some time between 12:00 and 2:00 a.m., a shooting erupted in the area of the restaurant's parking lot and a nearby gas station, during which Almonzo Williams was shot 13 times, leading to his death shortly after being transported from the scene. Lester Roberts and Kamal Lewis also sustained gunshot wounds, but both men survived.

Trial of all three codefendants began on October 18, 2012. During trial, three witnesses who all had allegedly previously provided statements to

---

[1] Because many of the individuals involved in this case possess the same last names, we refer to them by their first names to minimize confusion.

the police identifying Joh as one of the shooters on August 2, 2009 were called to testify. Two of the witnesses were Khareem's aunts, Arkiesa Hughes and Lynell Hughes, and the third witness was Joy Maynard. All three witnesses were present at the restaurant on the night of the shooting.

At trial, Detective Richard Matthews testified that he first interviewed Arkiesa and Lynell on August 2, 2009 following the shooting. (J.A. 697-99.) Arkiesa was first interviewed two hours after the incident. (J.A. 697.) Detective Matthews testified that Arkiesa told him she saw a man she identified as "Lion" holding a gun and then saw him "pumping [bullets] in [Almonzo]" before she ran away from the area (*Id.*) A few hours later, Detective Matthews went to Arkiesa's home and she picked Joh out of a photo array, identifying him as the shooter. (J.A. 711.) Lynell was interviewed later in the afternoon of August 2, 2009 and also stated that she saw a man that she knew only as "Lion" shooting a gun at the restaurant earlier that night. (J.A. 725.) Lynell gave a detailed physical description of "Lion" and then identified him in a photo array. (J.A. 725-30.) A few weeks later, on October 7, 2009, Detective Matthews conducted a second interview with Lynell where she allegedly stated that she saw "Lion" shooting at Almonzo. (J.A. 762.)

Maynard was interviewed by Detective Dino Herbert a few hours after the shooting on August 2, 2009. (J.A. 1068.) Detective Herbert testified that Maynard told him she had seen "[t]he guy with [the] locks" with a gun in his lap prior to the shooting. (J.A. 1072.) She was able to describe the individual in question, identifying Joh, but indicating that she knew him as "Lion." (J.A. 1073.) She then identified Joh using a photo array. (J.A. 1079.) Maynard told Detective Herbert that she did not see the shooting, but could see the flare of the shots. (J.A. 1073, 1074.)

During trial, all three witnesses gave testimony that was inconsistent with their pretrial statements. Specifically, Arkiesa testified that she never saw anyone, even Joh, fire shots and that by identifying Joh in the photo arrays, she was only indicating that she saw him on the night of the incident at the restaurant. (J.A. 289-290, 303.) Lynell also testified that she did not see Joh or anyone else fire a gun that night. (J.A. 513.) Both women admitted to signing the statements given to Detective Matthews, but indicated that they could not read and were not aware of the contents of the statements they had signed. (J.A. 135, 462.) Lastly, Maynard denied knowing Joh as "Lion" and denied having seen him, or anyone, holding a gun prior to the shooting. (J.A. 1031, 1040.)

Trial ended on November 4, 2011. The jury found Joh guilty of first degree murder of Almonzo, first degree assault for the shooting of Kamal Lewis, carrying or using a dangerous weapon during the commission of a crime of violence and reckless endangerment. The Superior Court sentenced Joh to life in prison without parole for the murder conviction and 15 years for the assault conviction, both to run concurrently. Joh was also sentenced to a consecutive five year sentence on the firearm possession conviction, and a consecutive 20 year sentence on the reckless endangerment conviction. Joh filed a timely notice of appeal on April 16, 2012.

## II. DISCUSSION

### A. Jurisdiction and Standard of Review

Title 4, section 32(a) of the Virgin Islands Code gives this Court "jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court, or as otherwise provided by law." The written judgment embodying the adjudication of guilt and the sentence imposed based on that adjudication constitutes a final judgment. *See, e.g., Jackson-Flavius v. People*, 57 V.I. 716, 721 (V.I. 2012) (citing *Potter v. People*, 56 V.I. 779, 787 (V.I. 2012)). Therefore, this Court possesses appellate jurisdiction over this appeal.

This Court's consideration of the Superior Court's application of law is plenary, while findings of fact are reviewed for clear error. *St. Thomas-St. John Bd. of Elections v. Daniel*, 49 V.I. 322, 329 (V.I. 2007); *see also People v. John*, 52 V.I. 247, 255 (V.I. 2009) (quoting *United States v. Shields*, 458 F.3d 269, 276 (3d Cir. 2006)), *aff'd*, 654 F.3d 412, 55 V.I. 1324 (3d Cir. 2011). Moreover, we review the Superior Court's evidentiary rulings for abuse of discretion, unless its decision involves application of a legal precept, in which case this Court would exercise plenary review. *Corriette v. Morales*, 50 V.I. 202, 205 (V.I. 2008).

### B. Admission of Prior Inconsistent Statements

█ In his appellate brief,[2] Joh asks that we decide whether section 19 of title 14 of the Virgin Islands Code, which the Superior Court relied

---

[2] Although Joh has not challenged the sufficiency of the evidence on appeal, we note that his codefendant, Khareem, did so in his own appeal. *Hughes v. People*, 59 V.I. 1015, 1019 (V.I. 2013). This Court has previously held that when one codefendant receives reversal on appeal

upon to admit the three inculpatory prior inconsistent statements, was implicitly repealed when the Legislature passed Act No. 7161 adopting the Federal Rules of Evidence.[3] Subsequent to Joh submitting his brief, this Court specifically addressed this issue and held that section 19 was implicitly repealed when Act No. 7161 was passed. *Simmonds v. People*, 59 V.I. 480, 492 (V.I. 2013). Although Joh did not explicitly argue before the Superior Court that Act No. 7161 implicitly repealed section 19, we review his claim under a *de novo* standard of review because his objection to the validity of section 19 fairly presented the question to the Superior Court.[4] *See* V.I.S.CT.R. 4(i) ("Only issues and arguments fairly presented to the Superior Court may be presented for review on appeal . . . .").

---

by raising an issue that a second codefendant neglected to brief, the interests of justice require providing the second codefendant with the same remedy, provided that the codefendant has forfeited, rather than waived, consideration of that issue. *Boston v. People*, 56 V.I. 634, 644-45 (V.I. 2012). However, even if Khareem were to ultimately succeed in his sufficiency argument in his own appeal, we would not apply the rule stated in *Boston* to this case because the evidence introduced at trial was sufficient to sustain Joh's murder conviction, given that Lynell and Arkiesa, through their prior statements, identified Joh as the shooter. *See Ambrose v. People*, 56 V.I. 99, 107 (V.I. 2012) ("[W]hen an appellate court reviews the sufficiency of the evidence, it must 'consider all the evidence the [jury] had before it, including any evidence that is later determined to be inadmissible.' ") (quoting *State v. Frazier*, 2001 SD 19, 622 N.W.2d 246, 261 (S.D. 2001)).

[3] Joh also argued in his appellate brief that the admittance of the witness's prior inconsistent statements as substantive evidence, in accord with section 19 of title 14 of the Virgin Islands Code, violates his due process rights as well as the Sixth Amendment Confrontation Clause. Specifically, Joh argues that section 19 subverts the trial process by allowing a defendant to be convicted based on statements whose truth was procured by the police under "their techniques [and] exclusive environment." However, this Court need not address the constitutionality of section 19 in light of the fact that the Legislature implicitly repealed the statute.

[4] Nevertheless, even if we were to review under the more stringent plain error standard, our result would remain the same. For this Court to reverse the Superior Court under the plain error standard of review, "there must be (1) 'error,' (2) that is 'plain,' and (3) that 'affect[s] substantial rights.' " *Francis v. People*, 52 V.I. 381, 390 (V.I. 2009) (quoting *Johnson v. United States*, 520 U.S. 461, 466-67, 117 S. Ct. 1544, 137 L. Ed. 2d 718 (1997)). But even "[i]f all three conditions are met," this Court may reverse the Superior Court "only if (4) the error seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *Id.* at 390-91. As noted above, the Superior Court committed error by applying section 19 to the exclusion of Federal Rule of Evidence 801(d)(1)(A). Moreover, while the issue of whether section 19 had been implicitly repealed had been unsettled at the time the Superior Court considered the question, "whether a legal question was settled or unsettled at the time of [the district court's decision], it is enough that an error be 'plain' at the time of appellate consideration." *Henderson v. United States*, 133 S.Ct. 1121, 1130-31, 185 L. Ed. 2d 85, (2013). Moreover, as explained *infra*, the admission of the prior inconsistent statements as

 Thus, pursuant to *Simmonds*, Federal Rule of Evidence 801(d)(1)(A) applies. Rule 801(d)(1)(A) provides:

> (d) Statements That Are Not Hearsay. A statement that meets the following conditions is not hearsay: (1) A Declarant-Witness's Prior Statement. The declarant testifies and is subject to cross-examination about a prior statement, and the statement:
>
> (A) is inconsistent with the declarant's testimony and was given under penalty of perjury at a trial, hearing, or other proceeding or in a deposition;

If a prior inconsistent statement meets the requirements of Rule 801(d)(1)(A) it may be admitted as substantive evidence to establish the truth of the matter asserted. A prior inconsistent statement that does not meet one of the criteria of Rule 801(d)(1)(A), however, may be used only for the purpose of impeaching the witness. FED. R. EVID. 801(d)(1)(A) (advisory committee notes). Here, Arkiesa's, Lynell's and Maynard's initial statements were made at the police station and Lynell's second statement was made at her home. Thus the alleged statements made by each witness should not have been admitted as substantive evidence because they were not given under oath at a trial, hearing, other proceeding,[5] or deposition. However, the statements could be properly admitted for impeachment purposes under Federal Rule of Evidence 613.[6]

---

substantive evidence was not harmless, and the harmless error standard is functionally equivalent to the third prong of the plain error test. *Fahie v. People*, 59 V.I. 505, 516 n.5 (V.I. 2013) (collecting cases). Moreover, when one excludes the inadmissible prior inconsistent statements, the evidence against Joh is not overwhelming, and thus the Superior Court's error strongly affected "the fairness, integrity, or public reputation of [the] judicial proceedings." *Phipps v. People*, 54 V.I. 543, 546 (V.I. 2011).

[5] The term "other proceeding" is not unlimited. A typical police station interrogation, for example, is not an "other proceeding" within the meaning of the Rule. *See, e.g., United States v. Day*, 789 F.2d 1217, 1222 (6th Cir.1986). " 'The Rule seems to contemplate situations in which an official verbatim record is routinely kept, whether stenographically or by electronic means, under legal authority.' " *United States v. Livingston*, 661 F.2d 239, 240, 213 U.S. App. D.C. 18 (D.C. Cir. 1981) (quoting 4 D. LOUISELL & C. MUELLER, FEDERAL EVIDENCE § 419 at 171 (1980)). Here, there was no stenographer present, nor was there any "official verbatim record" being kept while the witnesses provided their statements to the detectives. Thus, the witness's statements were not made as part of an "other proceeding" within the meaning of Rule 801(d)(1)(A).

[6] We decline to take a position on whether, in this case, the statements were properly admitted at trial under Rule 613.

■ The Superior Court's error in applying section 19 rather than Rule 801(d)(1)(A) only warrants a new trial if it prejudiced Joh, i.e., if the error was not harmless. *Ritter v. People*, 51 V.I. 354, 368 (V.I. 2009). " '[U]nless there is a reasonable possibility that the improperly admitted evidence contributed to the conviction, reversal is not required.' " *Id.* at 369 (quoting *Schneble v. Florida*, 405 U.S. 427, 432, 92 S. Ct. 1056, 31 L. Ed. 2d 340 (1972)). "An error in admitting evidence is not so prejudicial as to require a new trial when there is other overwhelming evidence of the defendant's guilt." *Brown v. People*, 54 V.I. 496, 515 (V.I. 2010).

■ Here, the admission of the inconsistent statements as substantive evidence was not harmless. The People presented no other witnesses claiming to have seen Joh fire shots or to have seen him with a weapon. Joh did not flee from the police, nor were any guns recovered from his person. Therefore, given that the People did not introduce evidence other than the inadmissible prior inconsistent statements to tie Joh to any of the offenses, there is a reasonable possibility that the improperly admitted statements contributed to the conviction. Accordingly, Joh is entitled to a new trial on all counts.

## III. CONCLUSION

For the foregoing reasons, we reverse Joh's convictions for first-degree murder, first-degree assault, reckless endangerment in the first degree, and unauthorized possession of a firearm during the commission of a crime of violence, and remand this matter for a new trial.